APPLE INC., a California
corporation, Plaintiff,

v.

PSYSTAR CORPORATION, a Florida
corporation, and Does 1–10,
inclusive, Defendants.

No. C 08–03251 WHA.

United States District Court,
N.D. California.

Sept. 23, 2009.

James G. Gilliland, Jeb Bacon Oblak, Megan M. Chung, Mehrnaz Boroumand Smith, Townsend and Townsend and Crew LLP, San Francisco, CA, for Plaintiff.

David Vernon Welker, Boise, ID, Eugene Action, Fresno, CA, Kiwi Alejandro Danao Camara, Camara & Sibley LLP, Houston, TX, for Defendants.

## ORDER RE DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS–MOTION FOR PROTECTIVE ORDER

WILLIAM ALSUP, District Judge.

### INTRODUCTION

Defendant Psystar Corporation has moved to compel Apple Inc. to provide evidence regarding the injury Apple has allegedly suffered, including profit margins. In turn, Apple has filed a cross-motion for a protective order to prevent Psystar from seeking information regarding its profit margins on the sale of its computer models. Because Apple's profit margins are not required for either parties' claims or defenses in this action, Psystar's motion to compel is DENIED, and Apple's motion for a protective order is GRANTED.

### STATEMENT

This discovery dispute began with the Rule 30(b)(6) deposition of Philip Schiller regarding Apple Inc.'s injury. In July, Psystar Corporation served Apple with a Rule 30(b)(6) deposition notice. Mr. Schiller was designated as Apple's corporate representative with respect to topic 3 in the deposition notice, which sought testimony as to the following:

> The injury suffered by Apple as a result of the allegedly unlawful acts about which Apple complains in this action and the injury that Apple is likely to suffer if these acts continue, including but not limited to the amount and manner of

calculation of any lost profits, and distinguishing between the injury caused by each unlawful act in which Apple alleges that Psystar engaged.

Apple responded that it would "provide a witness to testify on injury suffered by Apple as a result of the unlawful acts committed by Psystar that Apple complains about in this action." Mr. Schiller, although designated on the topic of injury, would not testify on the subject. After a discovery hearing on the cross motions at issue, the Court allowed the parties to submit supplemental briefing.

### ANALYSIS

Psystar claims that Apple's profit margins are relevant to a number of claims and relief, namely (1) Apple's request for statutory damages for copyright infringement; (2) Psystar's claim for copyright misuse; (3) Psystar's defenses to claims with actual damages, particularly trademark infringement; and (4) Apple's request for permanent injunctive relief. Apple counters that its profit margin information is not relevant. Significantly, Apple does not seek lost profits as a measure of its actual damages in this action (Apple Supp. Br. 2).

#### 1. COPYRIGHT INFRINGEMENT.

Psystar first contends that Apple's profit margins are relevant to statutory damages for copyright infringement. The Copyright Act provides that "an infringer of copyright is liable for either—(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. 504(a). Subsection (b) of the Act states that:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement,

928

and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Subsection (c) of the Act provides, in pertinent part, that:

[T]the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually ... in a sum of not less than $750 or more than $30,000 as the court considers just.

Here, Apple has elected to seek either Psystar's profits or statutory damages rather than actual damages for its copyright infringement claim. Apple may elect statutory damages regardless of the adequacy of the evidence offered as to its actual damages and the amount of defendant's profits, and even if it has intentionally declined to offer such evidence, although it was available. *See* 4–14 NIMMER ON COPYRIGHT § 14.04 (2009); *see also L.A. News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir.1998) ("a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant").

The district court has wide discretion in assessing statutory damages. To determine the amount of statutory damages, courts consider such factors as

(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright;

(4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Microsoft Corp. v. Nop,* 549 F.Supp.2d 1233, 1237 (E.D.Cal.2008). Notably, the factors include the *profits reaped by defendant and the revenues lost by plaintiff, not the plaintiff's profits.*

To argue otherwise, Psystar primarily relies on *Bly v. Banbury Books, Inc.,* 638 F.Supp. 983 (E.D.Pa.1986). But that decision does not support Psystar's argument. *Bly* stated: "While *it is clear that to require a plaintiff to adduce specific proof of actual damages or profits would contravene the purpose of the statutory damages provision,* this does not mean that it is irrelevant whether and to what extent a plaintiff has been harmed by a defendant's infringement." *Id.* at 987 (internal citations omitted) (emphasis added). *Bly* went on to say that some courts have held that statutory damages should bear some relation to actual damages suffered. In *Bly,* the plaintiff moved for summary judgment and sought statutory damages for copyright infringement. The defendant argued that statutory damages should not be awarded in the absence of evidence of the losses to plaintiff or the gains to defendant resulting from defendant's infringement, and the plaintiff argued that such proof was not relevant. In ultimately deciding to award $250 as minimal statutory damages in the absence of any proof of plaintiff's actual damages, the *Bly* court pointed to the legislative history, which stated "the *plaintiff in an infringement suit is not obliged to submit proof of damages and profits* and may choose to rely on the provision for minimum statutory damages." *Id.* at 987–88 (*quoting* H.R. REP.

No. 1476, 94TH CONG., 2D SESS. 161 5777) (emphasis added). Likewise, Apple is not obliged to provide proof of its own profits when it has elected to seek statutory damages.

Psystar's other citations similarly did not explicitly require the copyright owner to provide proof of its profit margins when seeking statutory damages. *See, e.g., Feltner v. Columbia Pictures TV,* 523 U.S. 340, 355, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (providing "a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself"); *BMW of North America v. Gore,* 517 U.S. 559, 581, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (addressing due-process challenges to a *punitive damages* award by examining the ratio of the punitive damages to the actual harm inflicted on the plaintiff).

In conclusion, Psystar has not demonstrated that evidence of Apple's profit margins is required for Apple to seek statutory damages for its copyright infringement claim.

## 2. TRADEMARK INFRINGEMENT.

Psystar also contends that Apple's profit margin information is relevant for Psystar's defenses to any claims for actual damages, specifically Apple's trademark-infringement claims. Psystar states that Apple had not yet made an election to limit its trademark claims to statutory damages. Apple, however, represents that it seeks only injunctive relief for its trademark-infringement claims (Reply Br. 1). As such, actual damages are not at issue for the trademark claims and Psystar's argument on this point is moot.

## 3. INJUNCTIVE RELIEF.

Psystar also argues that Apple's profit margins are relevant to Apple's request for a permanent injunction. The Supreme Court has stated that

A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

■ Pursuant to the four-factor test, Apple must prove it has suffered irreparable harm. Other than for trademark infringement claims, there is no presumption of irreparable harm with respect to a permanent injunction. "[I]rreparable harm may not be presumed, but in run-of-the-mill copyright litigation, such proof should not be difficult to establish. Thus, [p]laintiffs may establish an irreparable harm stemming from the infringement (*e.g.,* loss of market share, reputational harm)." *MGM Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp.2d 1197, 1215 (C.D.Cal.2007) (internal citations omitted). To obtain a permanent injunction, Apple contends it will attempt to show injury to its brand's goodwill and business reputation as well as try to prove that Psystar induced copyright infringement and circumvented Apple's protection measures in violation of the Digital Millennium Copyright Act.

Psystar cites to several Fifth Circuit decisions to support its argument that it needs Apple's lost profit data to show Apple has not suffered harm that is incalculable or irreparable. None of those decisions, however, expressly stated that a plaintiff must produce evidence of lost profits. In passing, *z4 Techs* stated that

the plaintiff would not "suffer lost profits, the loss of brand name recognition or the loss of market share" and "[t]hese are the type of injuries that are often incalculable and irreparable." *z4 Techs., Inc. v. Microsoft Corp.*, 434 F.Supp.2d 437, 440 (E.D.Tex.2006). There, the plaintiff's motion for a permanent injunction was denied, because the plaintiff could be compensated for any harm by calculating a reasonable royalty for defendant's continued use of the product at issue. *Id.* at 441.

The other cited decisions merely stand for the proposition that the "lost goodwill of a business operated over a short period of time is usually compensable in money damages," and they did not address profit margin data in relation to lost goodwill. *See DFW Metro Line Servs. v. Southwestern Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir.1990) (denying preliminary injunction where the plaintiff was only in business for one and a half years and any injury could be calculated and recompensed in the form of damages); *GTE Card Services Inc. v. AT & T Corp.*, 1997 WL 74712, at *3 (N.D.Tex. Feb. 12, 1997) (denying preliminary injunction where the plaintiff's business was not yet one year old and the availability of monetary damages precluded a showing of irreparable injury).

In a conclusory fashion, Psystar also argues that financial profit data is necessary for Psystar to later show that monetary damages would be adequate and to demonstrate that the balance of hardships between the parties does not require an equitable remedy. Again, the few decisions Psystar cites are inapposite and do not shed any light on its assertion that lost profit data is necessary. *See Smith v. Sprint Comm's. Co.*, 1996 WL 1058204, at *4 (N.D.Cal. Sept. 13, 1996) (stating that the "evaluation of a claim for injunctive relief does not require the Court to calculate damages" and concluding plaintiff could not plead irreparable harm because

she paid the telephone company's filed rate and money damages from the telephone company would suffice to compensate her); *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F.Supp. 730, 732 (S.D.N.Y. 1981) (granting permanent injunction because money damages would not suffice when there was a strong probability that the defendant would continue to infringe plaintiff's copyright in the future).

In sum, Psystar has not shown that Apple's profit margins are necessary for a determination as to a permanent injunction.

**4. COPYRIGHT MISUSE.**

Psystar has asserted a claim for copyright misuse. The copyright misuse doctrine "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir.2005). "The misuse defense prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A & M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir.2001).

According to Psystar, "Apple's profit margins are relevant in this case because a reasonable juror might consider them in deciding whether Apple has used its copyright in Mac OS X to diminish competition in the market for personal computers" (Psystar Supp. Br. 13). Citing no support, Psystar argues that if Apple's profit margins are unusually large, then this suggests that Apple's alleged efforts to limit competition in the market for personal computers have been successful. There, however, has been no demonstration that such evidence would be probative. On a related point, a court in this district excluded evidence of excessive profits under FRE 403 and stated:

First of all, the probative value of HTC's evidence of "supracompetitive" profits was very weak. Many courts have disparaged the evidentiary value of high profits to indicate monopoly power. *See, e.g., In Re IBM Peripheral EDP Devices, Etc.,* 481 F.Supp. 965, 981 (N.D.Cal.1979) ("the inference that a defendant that enjoys healthy profits only does so because of an unhealthy market structure is not a strong one"); *Forsyth v. Humana, Inc.,* 827 F.Supp. 1498, 1511 (D.Nev.1993) ("proof of excessive profits . . . may be misleading and subject to several interpretations"). After all, high profits may be indicative of a variety of factors other than a monopoly power, such as an extraordinary market, operating efficiency, or high-quality management.

\* \* \*

Second, the danger of prejudice, unfair confusion, and misleading the jury from introducing the "supracompetitive" profit evidence was high. HTC could have used the evidence of the Mercury News' high profits to play on "David versus Goliath" sympathies.

*High Technology Careers v. San Jose Mercury News,* 1995 WL 115480, at \*3 (N.D.Cal. Mar. 14, 1995) (Judge Williams). Similarly, in this action, whether or not Apple has high profit margins will provide little, if any, evidentiary value for Psystar's copyright misuse claim.

█ It is true that some courts have looked to anticompetitive conduct when evaluating copyright misuse claims, but that did not include an examination of high profits. *See, e.g., Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640, 647 (7th Cir.2003); *Practice Mgmt. Info. Corp. v. AMA,* 121 F.3d 516, 520 (9th Cir.1997); *Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 972 (4th Cir.1990). In the absence of any showing that Apple's profit margins are necessary to address Psystar's copyright misuse claim, Psystar's request is denied on this ground.

**CONCLUSION**

For the foregoing reasons, defendant Psystar's motion to compel testimony regarding Apple's profit margins is DENIED, and Apple's motion for a protective order excluding Apple's product line profit margin information is GRANTED. If it turns out that there is a plausible way in which Apple's profit margin would be relevant, then it will be presumed and the jury will be told that the amount of the profit margin would have been adverse to Apple with respect to that question. With this final caveat, there can be no prejudice to Psystar.

**IT IS SO ORDERED.**